# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 877 | **DATE** | 1/27/2004 |
| **CASE TITLE** | Amzak Corporation vs. Reliant Energy, Inc., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss [24-1] is granted. Plaintiff's first amended complaint is dismissed without prejudice. Plaintiffs are given leave until 2/27/04 to file a second amended complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 28 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | 36 |
| | Mail AO 450 form. | | 1/27/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD | mailing deputy initials |

|  |  |  |
|---|---|---|
| AMZAK CORPORATION, COUNTRYSIDE CABLE, INC., and GERALD KAZMA, | ) ) ) ) | **DOCKETED** |
| Plaintiffs, | ) ) ) | JAN 2 8 2004 |
| vs. | ) ) | No. 03 C 0877 |
| RELIANT ENERGY, INC. (n/k/a CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC), R. STEVE LETBETTER, STEPHEN W. NAEVE and MARY P. RICCIARDELLO, | ) ) ) ) ) ) | Judge Joan H. Lefkow |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Amzak Corporation ("Amzak"), Countryside Cable Inc. ("Countryside"), and

Gerald Kazma ("Kazma"), bring this law suit alleging that defendants, Reliant Energy, Inc. (n/k/a

Centerpoint Energy Houston Electric, LLC) ("Reliant Energy"), R. Steve Letbetter ("Letbetter"),

Stephen W. Naeve ("Naeve") and Mary P. Ricciardello ("Ricciardello") (collectively

"defendants"), violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78k(b), and

Rule 10b-5 promulgated under § 78j(b), by knowingly making misrepresentations and by failing

to state material facts concerning publicly traded securities in Reliant Energy. Plaintiffs also

allege (a) violation of § 20(a) of the Securities Exchange Act of 1934, 18 U.S.C. § 78t(a); (b)

fraudulent misrepresentation under Illinois law; and (c) violation of the Illinois Consumer Fraud

and Deceptive Business Practices Act. Defendants have moved to dismiss the claims for failure

3 6

to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) and for failure to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA"). For the reasons set forth below, defendants' motion is granted and plaintiffs' First Amended Complaint is dismissed without prejudice.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

In addition to the mandates of Rule 12(b)(6), Federal Rule of Civil Procedure 9(b) requires "all averments of fraud" to be "stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *see also DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although

2

states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story."). "'Because only a fraction of financial deteriorations reflects fraud,' . . . plaintiffs in securities cases must provide enough information about the underlying facts to distinguish their claims from those of disgruntled investors." *Arazie* v. *Mullane*, 2 F.3d 1456, 1458 (7th Cir. 1993) (quoting in part *DiLeo*, 901 F.2d at 628).

Further, in addition to Rule 9(b), the PSLRA imposes "heightened pleading requirements" to discourage claims of "so-called 'fraud by hindsight.'" *In re Brightpoint, Inc. Sec. Litig.*, No. IP99-0870-C-H/G, 2001 WL 395752, at *3 (S.D. Ind. Mar. 29, 2001). Section 78u-4(b) "requires a court to dismiss a complaint that fails to (1) identify each of the allegedly material, misleading statements, (2) state facts that provide a basis for allegations made on information and belief, or (3) state with particularity 'facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* at *4.

## ALLEGATIONS OF THE COMPLAINT

Reliant Energy is an international energy services and energy delivery company providing services in North America and Western Europe. (First Am. Compl. ¶ 6.) In December 2000, Reliant Energy transferred substantially all of its unregulated business to its subsidiary, Reliant Resources, Inc. (First Am. Compl. ¶ 19.) In April 2001, Reliant Resources' shares were offered to the public in an initial public offering. Letbetter was Reliant Energy's President and Chief Executive Officer, and Naeve its Vice Chairman and Chief Financial Officer. (First Am. Compl. ¶ 6.) Ricciardello was Reliant Energy's and Reliant Resources' Chief Accounting Officer. (*Id.*)

In May 2002, defendants announced that an internal investigation revealed that Reliant Resources had engaged in "Round-trip Transactions"[1] which had artificially inflated Reliant Resources' trading volume and revenues. (First Am. Compl. ¶ 24.) Plaintiffs allege that these transactions resulted in defendants' making certain false and misleading statements throughout the time period of August 2, 1999 through May 10, 2002. (First Am. Compl. ¶ 25.) During the time that Reliant Energy issued these false and misleading statements, its shares traded as high as $50.02 per share (on May 1, 2001) and, after curative statements made by Reliant Energy on May 10 and 13, 2002 regarding the Round-trip transactions, the market price of the stock fell to as low as $5.40 per share. (First Am. Compl. ¶ 24.)

Plaintiffs' general theory of injury alleges that they all owned securities in Reliant Energy and, during the time the stock prices were inflated due to the Round-trip transactions and related false and misleading statements of defendants, they pledged these securities as collateral for certain loans issued by banks. (First Am. Compl. ¶ 13.) Plaintiffs allege that when the price of the stock declined prior to the disclosure by defendants of the Round-trip transactions and the banks required payment to supplement the collateral, plaintiffs relied on defendants' false and

---

[1] According to plaintiffs' first amended complaint, "Round-trip" trades are

pre-arranged simultaneous trades entered into for the purpose of artificially inflating volumes or revenues or for the purpose of manipulating prices. The Roundtrip Transactions were specifically designed to cancel each other out, so [Reliant Resources] did not have a gain or a loss in net income as a result of any Roundtrip Transaction. Nonetheless, [Reliant Resources] elected to still report trading volume and present a false appearance of revenue generated by such Transactions. Trading volume is an indicator used by energy market analysts in order to determine the relative rankings of energy traders. The Roundtrip transactions were used to increase trading volumes thereby increasing [Reliant Resources'] ranking on the list of power marketers for trading volume. In addition, the Roundtrip Transactions were used to set benchmark contract prices for energy trades. Accordingly, [Reliant Resources] was able to set higher general contract prices for energy through Roundtrip transactions which cost it nothing and netted it nothing.

(First Am. Compl. ¶ 21.)

4

misleading statements to base further investments into the loan collateral to avoid having the stock foreclosed and sold by the bank. (First Am. Compl. ¶¶ 15-18.) Moreover, according to plaintiffs, after the defendants' alleged false and misleading statements became known, the price of the securities dropped in value and pursuant to the respective loan agreements entered into with each lender, the lender demanded payments from plaintiffs for additional collateral. (*Id.*) Once again, rather than allow the lenders to collect through use of the collateral, plaintiffs made payments with other assets and suffered additional losses. (*Id.*) These payments were to replace the perceived value of the stock and prevent sale by foreclosing on the collateral. (*Id.*) According to plaintiffs, all of the above payments to their lenders after their initial pledge of Reliant Energy stock resulted in "constructive purchases" of additional shares of stock. (First Am. Compl. ¶ 14.)

## DISCUSSION

**A.  Count I: Section 10(b)**

Section 10(b) of the Securities Exchange Act of 1934 provides,

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . [,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission ["SEC"] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Pursuant to this section, the SEC promulgated Rule 10b-5, which makes it unlawful for any person

(a) To employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were

5

made, not misleading, or (c) [t]o engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To establish liability under § 10(b) and Rule 10b-5, a plaintiff must prove that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." *Caremark, Inc.* v. *Coram HealthCare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997); *Searls* v. *Glasser*, 64 F.3d 1061, 1066-67 (7th Cir. 1995). Significantly, this remedy under § 10(b) and Rule 10b-5 is limited only to "actual purchasers and sellers" of securities. *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 732 (1975).

Defendants' attack on plaintiffs' First Amended Complaint focuses on the "in connection with the purchase or sale of securities" portion of the above test. Plaintiffs' First Amended Complaint does not allege any actual purchase of stock, or for that matter any sale of stock (despite *Marine Bank* v. *Weaver*, 455 U.S. 551, 555 n.2 (1982) ("[A] pledge of stock is equivalent to a sale for the purposes of the antifraud provisions of the federal securities laws.") (citing *Rubin* v. *United States*, 449 U.S. 424 (1981)), but instead focuses on a so-called "constructive purchase" theory. According to plaintiffs, the loans they received from their banks were based on the perceived value of the stock at the time of the pledge. Plaintiffs submit that they could not have undertaken such large loans absent their reliance on the value of their collateral to back up the loan. When the value of the pledged stocks dropped, and the lenders declared default, plaintiffs avoided the loan default by paying the bank the lost value in the

collateral. This, the plaintiffs maintain, is a constructive purchase of shares and resulted in additional investment risk.

As defendants point out, it is not clear how plaintiffs' "constructive purchase" theory holds water. There is no allegation that the plaintiffs' loan transactions with their banks resulted in additional shares of Reliant Energy stock. There was also no actual purchase by plaintiffs of the Reliant Energy stock when the purchase price was inflated. The securities laws would, based on the allegations here, provide a remedy for an individual who purchased the stock at issue between the dates of August 2, 1999 through May 10, 2002, because the alleged false and misleading statements inflated the actual value of the stock. But all plaintiffs did was to take action to prevent foreclosure of their stock which had been posted as collateral. Indeed, all the false and misleading statements served to do was to allow plaintiffs to borrow more money with less collateral, which resulted in the bank threatening foreclosure if additional collateral was not supplied. The court acknowledges plaintiffs' claim that they could not have undertaken such large loans absent their reliance on the value of their collateral to back up the loan. Whatever this scenario can be called, however, it was not a purchase of a security as plaintiffs suggest.

Plaintiffs have little actual case law to support their view. They point to *American Cont'l Corp.* v. *Keating*, 49 F.3d 541 (9th Cir. 1995), but that case is distinguishable on its facts. In *American Cont'l Corp.* a trustee had accepted certain amounts of shares from a trust corporation as satisfaction of the trust corporation's obligation to fund the trust. *Id.* at 545. Thus, the trustee in that case acquired shares of the stock, which price had been artificially inflated based on material misrepresentations. *Id.* As defendants point out, in this case plaintiffs never acquired any shares of Reliant Energy stock during the period of the alleged fraud.

7

Plaintiffs also cite *United States* v. *Rubin*, 449 U.S. 424 (1980). In that case the petitioner was convicted of conspiring to violate § 17(a) of the Securities Act of 1933. *Id.* at 428. He challenged his conviction on grounds that a pledge of stock as collateral for a bank loan is not an "offer or sale" under § 17(a). *Id.* The petitioner had been vice president of a corporation named Tri-State Energy, Inc., and had approached several banks seeking loans to alleviate Tri-State's financial problems. *Id.* at 425. Collateral was required for the loan eventually obtained, and petitioner pledged stock in six companies which he represented as "being good, marketable, and unrestricted." *Id.* at 426. These securities were, in fact, worthless. *Id.* In rejecting the argument that these pledges of securities were not "offers" or "sales," the Court noted that it was not necessary for full title to pass to the transferee for the transaction to be an "offer" or "sale" and that the bank, as would an investor, is "relying on the value of the securities themselves, and . . . must be able to depend on the representations made by the transferor of the securities, regardless of whether the transferor passes full title or only conditional and defeasible interest to secure repayment of a loan." *Id.* at 430-31.

Plaintiffs submit that the circumstances in *Rubin* are identical to this case, except that the lender was not left in a position of default and the plaintiffs absorbed the loss in the true value of the stock and have the right of action against the defendants. But *Rubin* provides zero support for plaintiffs' theory that their additional payments to supplement their collateral constituted "constructive purchases" of Reliant stock even though no additional shares of stock had been gained. Plaintiffs do not proceed under the theory that their pledges of the stock, which as noted above would constitute "sales" under the securities laws, were made in connection with the fraudulent statements. *Rubin's* value in that situation would also be dubious in light of the vastly

8

different factual scenario in that case, which allowed a pledge of stocks to be considered an "offer" or "sale" of securities because the bank relied on the material misrepresentations the pledgor made to induce the bank to accept the worthless stock as collateral. Plaintiffs' theory here focuses not on the pledges themselves but, rather, the subsequent cash payments made to banks which plaintiffs believe constitute "constructive purchases." Neither *Rubin* nor any other case supports this constructive purchase theory. Because plaintiffs' do not sufficiently allege that any false or misleading statements were in connection with the purchase or sale of securities, their claim under § 10(b) and Rule 10b-5 cannot survive.

Plaintiffs previously asked for, and were granted, leave to file their First Amended Complaint. Thus, this is the court's first opportunity to examine the merits of plaintiffs' allegations. Given that the court is not absolutely certain that no securities fraud action may lie under the factual scenario presented here, plaintiffs will be afforded one more chance to state a securities fraud claim. The court, therefore, dismisses the Count I claim without prejudice.

**B.      Count II: Section 20(a)**

The parties agree that this claim's survival depends on whether plaintiffs' First Amended Complaint adequately states a claim under § 10(b) and Rule 10b-5. *See In re Allscripts, Inc. Secs. Litig.*, 2001 WL 743411, at *12 (N.D. Ill. June 29, 2001) ("If a Complaint does not adequately allege an underlying violation of the securities laws . . . the district court must dismiss the section 20(a) claim."). Because the court dismissed the claims under § 10(b) and Rule 10b-5 without prejudice, it shall do the same for the § 20(a) claim.

## C. State Law Claims

All that remains of plaintiffs' First Amended Complaint are state law claims for fraudulent misrepresentation (Count III) and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV). These both being state law claims, the court must examine its jurisdiction over these Counts. Plaintiffs' First Amended Complaint alleges that jurisdiction is invoked over the state claims pursuant to both this court's supplemental jurisdiction under 28 U.S.C. § 1367 and its diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Since all federal claims have been dismissed without prejudice, the court would exercise its discretion to decline supplemental jurisdiction over the state law claims until a federal claim has first been established. *See* 28 U.S.C. § 1367(c)(3); ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court dismissed all claims over which it has general jurisdiction."); *Groce* v. *Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

The supplemental jurisdiction issue, however, would be mooted if this court were to have a basis for original jurisdiction under § 1332(a)(1). Diversity jurisdiction under § 1332(a)(1) requires complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000 exclusive of interests and costs. While plaintiffs' First Amended Complaint attempts to invoke this court's diversity jurisdiction, its allegations are insufficient. Plaintiffs correctly identify the citizenship of Amzak and Countryside. Each is alleged to be a corporation, and both are listed as Delaware Corporations with their principal places of business in Lisle, Illinois. The First Amended Complaint makes no mention of Kazma's citizenship, instead

referring to his "residence" as being in Illinois. Residence, however, is insufficient to invoke this court's diversity jurisdiction. *See, e.g., Macken* v. *Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) ("[C]itizenship may differ from residence . . . ."); *Meyerson* v. *Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002) ("[R]esidence and citizenship are not synonyms and it is the latter that matters for purposes of the diversity jurisdiction."). As for Letbetter, Naeve, Ricciardello, there is no allegation at all concerning their citizenship.

Then there is the matter of Reliant. The First Amended Complaint alleges that Reliant is a Texas Corporation with its principal place of business in Texas. However, the First Amended Complaint also states that Reliant is "n/k/a" or "now known as" Centerpoint Energy Houston Electric, LLC. For purposes of diversity jurisdiction, corporations are treated differently from limited liability companies. *Compare Holtz* v. *J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 738 (7th Cir. 1999) ("In order to establish the citizenship of a corporation, a party must establish both where it is incorporated and the location of its principal place of business.") *with Cosgrove* v. *Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998) ("[T]he citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members."). Thus, the plaintiffs, if they should choose to rely on diversity jurisdiction as this court's basis to hear their state law claims, must plead whether it is Reliant's citizenship as a corporation (or perhaps more accurately, its former citizenship) or the citizenship of the individual members of Centerpoint Energy Houston Electric, LLC that should be considered for purposes of diversity jurisdiction.

11

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted [#24]. Plaintiffs'

First Amended Complaint is dismissed without prejudice. Plaintiffs are granted leave until

February 27, 2004 to file a Second Amended Complaint.

Enter: _____

JOAN HUMPHREY LEFKOW

Dated: January 27, 2004                    United States District Judge

12