Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 877 | **DATE** | 8/18/2004 |
| **CASE TITLE** | Amzak Corporation vs. Reliant Energy, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendants' motion to dismiss [#46] is granted and case is dismissed with prejudice for failure to adequately state a claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 1 9 2004 date docketed | 53 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 8/18/2004 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMZAK CORPORATION, COUNTRYSIDE CABLE, INC., and GERALD KAZMA,<br><br>Plaintiffs,<br><br>vs.<br><br>RELIANT ENERGY, INC. and its successor in interest CENTERPOINT ENERGY, INC.; R. STEVE LETBETTER; STEPHEN W. NAEVE; and MARY P. RICCIARDELLO,<br><br>Defendants. | **DOCKETED**<br>AUG 1 9 2004<br><br>No. 03 C 0877<br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

On January 27, 2004, this court dismissed without prejudice the First Amended Complaint of plaintiffs, Amzak Corporation ("Amzak"), Countryside Cable, Inc. ("Countryside"), and Gerald Kazma ("Kazma"), against defendants, Reliant Energy, Inc. (and its successor in interest CenterPoint Energy, Inc.) ("Reliant Energy"), R. Steve Letbetter ("Letbetter"), Stephen W. Naeve ("Naeve") and Mary P. Ricciardello ("Ricciardello") (collectively "defendants"). On March 3, 2004, plaintiffs filed their Second Amended Complaint which, similar to the First Amended Complaint, alleges that defendants (1) violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated under § 78j(b), by knowingly making misrepresentations and by failing to state material facts concerning publicly traded securities in Reliant Energy; (2) violated § 20(a) of the Securities Exchange Act of 1934, 18 U.S.C. § 78t(a); (3) committed fraudulent misrepresentation under

Illinois law; and (4) violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* Defendants have moved to dismiss the Second Amended Complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) and for failure to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA"). For the reasons set forth below, defendants' motion is granted.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

In addition to the mandates of Rule 12(b)(6), Federal Rule of Civil Procedure 9(b) requires "all averments of fraud" to be "stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777

2

(7th Cir. 1994); *see also DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story."). "'Because only a fraction of financial deteriorations reflects fraud,' . . . plaintiffs in securities cases must provide enough information about the underlying facts to distinguish their claims from those of disgruntled investors." *Arazie* v. *Mullane*, 2 F.3d 1456, 1458 (7th Cir. 1993) (quoting in part *DiLeo*, 901 F.2d at 628).

Further, in addition to Rule 9(b), the PSLRA imposes "heightened pleading requirements" to discourage claims of "so-called 'fraud by hindsight.'" *In re Brightpoint, Inc. Sec. Litig.*, No. IP99-0870-C-H/G, 2001 WL 395752, at *3 (S.D. Ind. Mar. 29, 2001). Section 78u-4(b) "requires a court to dismiss a complaint that fails to (1) identify each of the allegedly material, misleading statements, (2) state facts that provide a basis for allegations made on information and belief, or (3) state with particularity 'facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* at *4.

## ALLEGATIONS OF THE COMPLAINT

Reliant Energy is an international energy services and energy delivery company providing services in North America and Western Europe. (Sec. Am. Compl. ¶ 5.) During the time periods relevant to this action, Reliant Energy was the owner of approximately 82.4% of the stock of Reliant Resources, Inc. ("Reliant Resources"), an energy services company marketing power and natural gas in North America and Western Europe. (Sec. Am. Compl. ¶ 5.) Also, defendants Letbetter, Naeve, and Ricciardello ("individual defendants") were executive officers of Reliant Energy and/or Reliant Resources. (Sec. Am. Compl. ¶¶ 7-9.)

On May 10, 2002, Reliant Resources disclosed that it had engaged in so-called "roundtrip transactions" in which "it had engaged in transactions with other power traders to buy and sell power to each other simultaneously, and at the same price . . . ." (Sec. Am. Compl. ¶ 64.) Reliant Resources announced that it was undertaking a review of these transactions. (*Id.*) On May 13, 2002, after the review had taken place, Reliant Resources announced in a press release that the roundtrip transactions had the effect of improperly increasing revenues and improperly inflating trading volume. (Sec. Am. Compl. ¶ 65.)

Plaintiffs allege that defendants made materially false and misleading statements in SEC filings, press releases and other communications regarding Reliant Energy's revenues before the disclosure of the round-trip trades, and that those statements artificially inflated Reliant Energy's stock price during the August 2, 1999 to May 10, 2002 time period. (Sec. Am. Compl. ¶ 87.) Plaintiffs describe a numbers of actions they undertook with respect to Reliant Energy stock during that time period. On or about October 1, 2000, plaintiffs secured loans from Harris Bank by pledging their Reliant Energy stock as collateral. (Sec. Am. Compl. ¶ 14.) Plaintiffs allege that this transaction effected a transfer to the bank of "conditional and defeasible interests" in their Reliant Energy stock. (*Id.*) When the price of the Reliant Energy stock fell in June and July of 2001 (due to normal market forces and not fraud), the Reliant Energy stock became insufficient collateral for plaintiffs' loans with their bank. Rather than allow the bank to foreclose on the stock, plaintiffs transferred to the bank additional assets to serve as additional collateral. According to plaintiffs, by doing this they "purchase[d] from Harris Bank with cash from assets other than Reliant Energy stock the conditional and defeasible interests in such

4

pledged shares of Reliant Energy stock, thereby in effect redeeming their interests." (Sec. Am. Compl. ¶ 15.)

Plaintiffs allege a second similar scenario that took place in the fall of 2001 when the share price of Reliant Energy stock once again dropped and rendered plaintiffs' collateral insufficient. The loan agreements at this point were with LaSalle Bank. Plaintiffs again point out that they posted additional collateral to LaSalle Bank in order to avoid foreclosure on their Reliant Energy shares. (Sec. Am. Compl. ¶ 18.)

Plaintiffs assert damages because, on May 10 and 13, 2002, in the wake of the curative statements disclosing the round trip trades, Reliant Energy's stock fell from $24.60 on May 9, 2002 to $15.87 on May 14, 2002. (Sec. Am. Compl. ¶ 66.) Plaintiffs claim that absent the alleged misrepresentations they would not have transferred the additional collateral amounts to their banks and would have instead allowed the banks to foreclose on the shares. (Sec. Am. Compl. ¶¶ 87-88.) Plaintiffs also allege that they would have sold their Reliant Energy shares to several buyers who approached them during the time period, but did not do so because of the alleged misrepresentations. (Sec. Am. Compl. ¶¶ 101-05.)

## DISCUSSION

### A.     Count I: Section 10(b)

Section 10(b) of the Securities Exchange Act of 1934 provides,

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . [,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission ["SEC"] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Pursuant to this section, the SEC promulgated Rule 10b-5, which makes it unlawful for any person

> (a) To employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To establish liability under § 10(b) and Rule 10b-5, a plaintiff must prove that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." *Caremark, Inc. v. Coram HealthCare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997); *Searls v. Glasser*, 64 F.3d 1061, 1066-67 (7th Cir. 1995). Significantly, this remedy under § 10(b) and Rule 10b-5 is limited only to "actual purchasers and sellers" of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 732 (1975).

Defendants once again argue that plaintiffs' Second Amended Complaint fails because it does not allege any purchase or sale of stock. Plaintiffs' § 10(b) claim in their First Amended Complaint was dismissed on this ground. *See Amzak Corp. v. Reliant Energy, Inc.*, No. 03 C 0877, 2004 WL 407027, at *3-5 (N.D. Ill. Jan. 28, 2004). In their First Amended Complaint plaintiffs described the transactions at issue as "constructive purchases" of additional shares of Reliant Energy's stock. Abandoning that theory in their Second Amended Complaint, plaintiffs characterize their payments to supplement their collateral as re-purchases of "conditional and

6

defeasible interests" in Reliant Energy's stock. According to plaintiffs, when they first pledged the stocks they gave up these conditional and defeasible interests, and by pledging additional assets as collateral when the price of the stock went down, they purchased the conditional and defeasible interests back from the banks.

As defendants point out, whether these transactions are described as "constructive purchases" or purchases of "conditional and defeasible interests," this transaction only served as the transfer of additional assets to the banks to stop foreclosure on the pledged stock. For the reasons expressed in the January 27, 2004 memorandum opinion and order, the court does not believe that this is a purchase or sale of a security. Certainly no case has ever so held. Plaintiffs merely took action to prevent foreclosure of their stock and did not acquire any additional shares as a result of those actions. Because there is no allegation of a purchase or sale of securities within the relevant time period, the court dismisses the § 10(b) claims.[1]

## B.    Count II: Section 20(a)

This claim's survival depends on whether plaintiff's complaint adequately states a claim under § 10(b) and Rule 10b-5. *See In re Allscripts, Inc. Secs. Litig.*, No. 00 C 6796, 2001 WL 743411, at *12 (N.D. Ill. June 29, 2001) ("If a Complaint does not adequately allege an underlying violation of the securities law . . . the district court must dismiss the section 20(a) claim."). Because the claims under § 10(b) and Rule 10b-5 have been dismissed, the § 20(a) claim is likewise also dismissed.

---

[1] Even if there was a purchase or sale of security under the circumstances pled in plaintiffs' Second Amended Complaint, as discussed below, plaintiffs cannot prove any actionable damages. Accordingly, that is an alternative ground for dismissal of the § 10(b) claims.

## C. State Law Claims

Having dismissed the federal claims, all that remains are plaintiffs' state law claims for common law fraud and misrepresentation and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. The plaintiffs have alleged original jurisdiction over the state claims pursuant to 28 U.S.C. § 1332, which requires that all parties be of diverse citizenship and the amount in controversy exceed $75,000 exclusive of interest and costs. The Second Amended Complaint states that both Amzak and Countryside are Delaware Corporations with their principal places of business in Illinois. Kazma is also listed as a citizen of Illinois. Reliant Energy and CenterPoint Energy, Inc. ("CenterPoint") are Texas corporations with their principal places of business in that state. The individual defendants are all Texas citizens. Also, the amount in controversy exceeds $75,000 exclusive of interest and costs. Thus, this court's jurisdiction to consider the state claims rests in 28 U.S.C. § 1332(a)(1).

### 1. *Common Law Fraud and Misrepresentation*

To plead a claim for fraud under Illinois law, a plaintiff must show: (1) a false statement of material fact was made; (2) the defendant knew or believed the statement was false; (3) plaintiff was justified in relying on the statement; (4) the defendant intended to induce the other party to act; and (5) plaintiff suffered damage due to the reliance. *See Prime Leasing v. Kendig*, 332 Ill. App. 3d 300, 308-09, 773 N.E. 2d 84, 92 (2002). Defendants argue that plaintiffs' fraud claim fails for (a) a lack of damages, (b) failure to plead reliance with the required specificity, and (c) failure to plead that the individual defendants knew the alleged misrepresentations were false or that they intended to induce reliance.

Starting with defendants' damages argument, they assert that plaintiffs were not damaged by any alleged fraud insofar as they pledged the shares when the price was allegedly inflated by the false and misleading statements. Plaintiffs, in response, claim damages in two ways. First they claim to be damaged because they refrained from entering into "prepaid forward contracts" to sell the pledged shares due to the alleged material misrepresentations or omissions by defendants which created an inflated appearance of value of the Reliant Energy stock. Plaintiffs note that had they entered into these prepaid forward contracts, they would have obtained a minimum share price of $24.50 per share, as compared to a decline in value of approximately fifty percent when the stock fell to $15.87 on the date following the announcement of the improper round-trip trading. Second, plaintiffs claim damages when they had to make payments to their lenders to prevent them from selling the stock. According to plaintiffs, they repurchased rights in the stock at this time and to the extent the price at the time of the margin default buy-back was in excess of the later sales on the fraud-related collapse, they suffered a loss.

Both of plaintiffs' theories on damages are flawed. Their first theory, that they would have sold the shares based on prepaid forward contracts, essentially complains that they did not sell the stock while its price was artificially (and allegedly fraudulently) inflated. Plaintiffs admit as much: "The difference between the value at the time of the pledge and the later unfavorable prices represents demonstrable damages suffered by plaintiffs in forbearing a complete disposition of the shares." (Pl. Resp. at 5.) This amounts to nothing more than a claim that plaintiffs should be entitled to "profit from what they allege was an unlawfully inflated stock value." *Chanoff v. U.S. Surgical Corp.*, 857 F. Supp. 1011, 1018 (D. Conn. 1994). Significantly, plaintiffs do not allege, and are not understood to argue, that the price after the

9

disclosure was less than what the price would have been absent the alleged fraud. *See Small* v. *Fritz Cos., Inc.* 30 Cal. 4th 167, 191 (2003) (Kennard, J. concurring). Phrased another way, plaintiffs' theory of damages is not that they are attempting to recover that amount (if any) which constitutes "the loss in value attributable to fraud from that attributable to the disclosure of truthful but unfavorable financial data." *Id.* Instead, as noted above, plaintiffs' theory is that they should recover the difference in value at the time of the pledge from the later unfavorable price after disclosure of the alleged round-trip trades. The court rejects such a theory of damages.

Plaintiffs' second theory of damages also fails. Plaintiffs argue that they incurred out-of-pocket losses when they transferred "other assets" to their lenders as additional collateral when the loans became under-collateralized. But, once again, no where do plaintiffs allege that they in fact lost any of these out-of-pocket expenses. Instead, they assert that "[t]o the extent the price at the time of the margin default buy-back was in excess of the later sales on the fraud-related collapse, plaintiffs suffered a loss in that amount." (Pl. Resp. at 6.) As noted above, this would be nothing but a windfall to plaintiffs and is not a recoverable theory of damages. Thus, plaintiffs state law fraud and misrepresentation claims must fail on this ground.

Even if plaintiffs had brought forth a workable theory on damages, which they have not, the court agrees with defendants that the Second Amended Complaint also does not plead reliance with the requisite level of particularly mandated by Rule 9(b). To sufficiently plead reliance, plaintiffs would have to link one or more of the alleged misrepresentations with a specific act of reliance. *See Prime Leasing,* 773 N.E. 2d at 93. Initially, plaintiffs could not have relied on many of the alleged misrepresentations for their "acts of reliance" (which include

pledging the Reliant Energy shares for their loans, declining to accept offers to sell their Reliant Energy shares via forward sale contracts and choosing to prevent foreclosure by making additional payments to their lender) because these acts occurred between late 2000 through December 2001. (Sec. Am. Compl. ¶¶ 101-04.) Defendants' alleged misrepresentations extended into April 2002. (Sec. Am. Compl. ¶¶ 20-63.) Thus, none of these alleged misrepresentations in 2002 could have induced reliance in 2001 or earlier.

Moreover, the Second Amended Complaint does not establish a nexus between any particular alleged misrepresentation and a specific act of reliance by plaintiffs. Instead, plaintiffs' allegations of reliance in the Second Amended Complaint state that they relied on "information publicly disseminated about [Reliant Energy]'s business," "materially false and misleading information disclosed by defendants," or "financial and other information disseminated by Defendants." (Sec. Am. Compl. ¶¶ 101, 103, 106.) There is not, for example, a particular allegation that an act of reliance (such as plaintiffs' declining to sell their shares via forward sale contracts) was influenced by any alleged misrepresentation. Plaintiffs' conclusional statements listed above do not comply with the particularly requirements of Rule 9(b).[2]

In response, plaintiffs point to *Small v. Fritz Cos., Inc.* 30 Cal. 4th 167, 191 (2003), but that case does not help them with regard to reliance. All the *Small* case established (under California law) was that a plaintiff may file a so-called "holder action," where they could allege

---

[2]Plaintiffs could not and do not attempt to rely on a fraud on the market theory of reliance. Such a theory is not recognized under Illinois law. *See Gilford Partners, L.P. v. Sensormatic Elec. Corp.*, No. 96 C 4072, 1997 WL 757495, at *12 (N.D. Ill. Nov. 24, 1997) ("Illinois has never indicated that it would adopt the fraud-on-the-market theory.")

11

that they were wrongfully induced to hold rather than sell stock.[3] *Id.* at 171. Plaintiffs would still need to plead reliance with particularity, and the Court in *Small* noted as much. *See id.* at 184 (noting that a plaintiff must allege "specific reliance on the defendants' representations . . . ."). The plaintiffs have not done so in this case and, accordingly, have not pled a required element for a fraud claim under Illinois law. As such, their fraudulent misrepresentation claim is dismissed on this ground also.

2.  *Illinois Consumer Fraud and Deceptive Business Practices Act*

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "Act"), a plaintiff must allege specific facts that show (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving a trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. *Perona v. Volkswagen of Am., Inc.*, 292 Ill. App. 3d 59, 65, 684 N.E. 2d 859, 864 (1997). Additionally, the plaintiff must be a "consumer" with respect to a defendant's products. *See Menard Inc. v. Countryside Indus., Inc.*, No. 01 C 7142, 2004 WL 1336382, *2-3 (N.D. Ill. June 14, 2004). The statutory text defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). As previously stated, the alleged misrepresentations or fraud in this case did not induce the plaintiffs to purchase any additional stock. Therefore, they are not

---

[3]While Illinois law does recognize fraud where a misrepresentation causes a plaintiff to act or refrain from acting, *see Chicago Title & Trust Co. v. First Arlington Nat'l Bank*, 118 Ill. App. 3d 401, 406, 454 N.E. 2d 723, 727 (1983), no Illinois case has recognized the "holder action" allowed in the *Small* case. This court need not definitively decide if plaintiffs can bring such an action under Illinois law because, assuming that they can, they have not adequately plead a theory of damages or reliance.

consumers as defined by the statute. *See Camel* v. *Lincoln Nat'l Bank*, No. 96 C 6595, 1997 WL 321679, at *10 (N.D. Ill. June 6, 1997) (claim dismissed where plaintiff alleged that misrepresentations only induced him to retain or sell–but not purchase–stock). Because they are not consumers, the plaintiffs cannot state a valid claim under the Act, and this claim must also be dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted [#46]. Because this was plaintiffs' third opportunity to state a claim, and since they have not adequately done so, this court's dismissal of all the claims shall be with prejudice. This case is terminated.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: August 18, 2004